CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 27, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOSHUA DANIEL MURPHY, | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00515 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| DAVID ANDERSON, *et al.*, | ) | Chief United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Joshua Daniel Murphy, acting *pro se*, brought this 42 U.S.C. § 1983 action against

Warden David Anderson and Investigators Lt. RL Hickman, Lowe, and JF Harman, employees

of River North Correctional Center, a facility of the Virginia Department of Corrections

(VADOC).  After the defendants moved to dismiss, Murphy amended his complaint to add an

additional defendant, VADOC Director Chadwick S. Dotson.  (Dkt. No. 27, Am. Compl.)  The

amended complaint alleges one claim: a First Amendment retaliation claim.  Before the court is

defendants' motion to dismiss the amended complaint.  (Dkt. No. 30.)  Plaintiff filed a response

in opposition to the motion.  (Dkt. No. 34.)

For the reasons stated in this opinion, defendants' motion to dismiss will be granted.

I.  BACKGROUND

**A.  Plaintiff's Allegations**

Murphy's allegations pertain to retaliation by his placement in a dry cell in 2023.  (Am.

Compl. 2.)  Plaintiff alleges that on August 10, 2023, he was moved to A224 for suspicion of

contraband due to an "alleged anomaly on a body scan device."  This movement was directed by

Lt. Hickman with the approval of Warden Anderson.  (*Id.*)  The next morning, Officers Lowe

and Harman handcuffed plaintiff behind his back with only underwear bottoms and no clothes.

Officer Harman searched the cell.  During the search, random unknown inmates began whistling and yelling sexual innuendo directed at Murphy, who asked Lowe for something to cover his exposed body.  This request was denied, and the whistling and sexual comments from other inmates continued.  Another officer asked Lowe if he could retrieve something to cover Murphy.  This request was denied by Lowe "emphatically."  (*Id.*)  Lowe also denied Murphy's request to lodge a complaint under the Prison Rape Elimination Act.  (*Id.* at 3.)  When the search was over, Murphy asked JF Harmon to make a PREA complaint, and Lowe interjected to deny the request.  (*Id.*)

On August 12, 2023, Murphy used the restroom after 7:00 a.m., and he was then forced to eat three meals that day in the bathroom with feces and urine in the toilet.  Murphy's requests to flush the toilet and to wash his hands prior to eating were denied.  (*Id.*)  The next morning, August 13, 2023, Murphy was again forced to eat in the bathroom and not allowed to wash his hands with soap prior to eating the next four meals until August 14, when Harmon flushed the toilet.  (*Id.*)  Murphy further contends that from August 10 to 14, 2023, he was not allowed to brush his teeth with toothpaste and a toothbrush, and he was never allowed soap to wash his hands or his body.  The lights were on 24 hours per day in the cell.  (*Id.*)

After being released from the dry cell on August 15, 2023, Murphy filed a written PREA complaint.  Six days later, plaintiff received a letter from Hickman deeming the incident with Murphy's underwear as non-PREA.  Murphy filed a grievance that was deemed unfounded.  Murphy attempted to file a level II appeal with the Regional Ombudsman.  The appeal was held for 17 days in a dated envelope which negated the appeal.  (*Id.* at 4.)

Months later, after being released from restrictive housing (RHU) in May of 2024, a grievance (RNC-23-REG-00232) was missing from Murphy's personal property.  Lt. Hickman

placed plaintiff under surveillance after "manipulating emails that he had sent out." (*Id.*) Murphy's property was searched by RNCC investigators. (*Id.*)[1]

Murphy contends that the denial of personal hygiene products, leaving the lights on, refusing to flush the toilet filled with waste prior to meals, and forcing him to stand in a pod in his underwear, on top of interference with the grievance process are all acts of retaliation. (*Id.* at 5.)

Murphy seeks $100,000, for damages due to mental anguish and exposure to unsanitary conditions for five days. He also requests a transfer out of the State of Virginia due to ongoing retaliatory threats. (*Id.* at 7.)

## B.  Defendants' Motion and Plaintiff's Response

Defendants argue that plaintiff's amended complaint does not state a plausible First Amendment retaliation claim. (Dkt. No. 31.) Defendants' motion also addresses a potential Eighth Amendment claim. (*Id.*) Plaintiff's original complaint alleged an Eighth Amendment claim, but his amended complaint explicitly states that he is amending the complaint "from an eighth amendment to a first amendment for retaliation. This is a request to change the Plaintiffs claim to an abuse of power which is retaliatory in nature. Therefore this violates his first amendment rights." (Am. Compl. 1.) Based upon this clear language in the amended complaint, the court finds that plaintiff has abandoned any potential Eighth Amendment claim and the court will not address such a claim in this opinion.

In his response, plaintiff references the need for an evidentiary hearing. (Dkt. No. 34.) Murphy separately moved for appointment of counsel and for an evidentiary hearing, which was

---

[1] The amended complaint cites to exhibits that plaintiff attached to his original complaint. (Dkt. No. 1-1.)

denied by the court on August 5, 2025.  (Dkt. No. 36.)  Murphy argues that defendants are making "assumptions of coincidence" which create disputed factual issues.  (Dkt. No. 34 at 2.)

## II.  ANALYSIS

### A.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pleadings by pro se litigants must be construed liberally.  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).  "Principles requiring generous construction of *pro se* complaints are not, however, without limits."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  A pro se complaint must still "state a claim to relief that is plausible on its face."  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### B.  First Amendment Retaliation

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to

4

prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "Plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Instead, plaintiff must show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75.

To establish an actionable retaliation claim, Murphy must plausibly allege that he (1) engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal connection between his protected activity and the defendants' conduct. *Patterson v. Youngkin*, Civil Action No. 3:24CV186, 2025 WL 3443464, at *7 (E.D. Va. Dec. 1, 2025) (citing *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014)).

Defendants do not contest that Murphy's allegations are sufficient under the first element, but they contest the second and third elements. Under the third element, a plaintiff must allege a causal connection between the First Amendment activity and the alleged adverse action or actions. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Even if being forced to stand in his underwear in front of other inmates on August 11, 2023, was an adverse action, such action could not be in retaliation for exercising his First Amendment rights because it occurred before any First Amendment activity. Murphy did not ask to pursue a PREA complaint until after he was forced to stand in his underwear. Murphy also alleges that while in the dry cell he had to eat in a room with an unflushed toilet and constant lighting, and was denied personal hygiene products such as soap and a toothbrush. These dry cell conditions were allegedly retaliatory. Murphy admits, however, that he was placed in the dry cell by Lt. Hickman with approval from David Anderson because an anomaly

5

was detected on a body scan device.  But Murphy has not plausibly alleged any connection

between these adverse actions and his PREA complaint.  Moreover, Murphy has not plausibly

alleged any personal involvement of the defendants in the alleged adverse actions.  *See Trulock*

*v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (explaining that liability under § 1983 is "personal,

based upon each defendant's own constitutional violations."  Nor has he alleged any plausible

retaliation against him for pursuing a prison grievance in 2024.

Instead, plaintiff's response relies on his request for an evidentiary hearing, suggesting

that dismissal of his complaint would be unfair without further factual development.  But to

obtain discovery to prove his claims, Murphy is first required to state a plausible claim for relief.

This he has failed to do.  The court's order will give Murphy the option to reopen this case and

plead an actionable claim.  For now, the motion to dismiss will be granted and this matter will be

dismissed.

### III.  CONCLUSION

The court will issue an appropriate order granting defendants' motion to dismiss.

Entered: March 27, 2026.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge